## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

In re Application of

**MIYA WATER PROJECTS**
**NETHERLANDS, B.V.,**

    **Applicant.**

Misc. No. **22-508 PJM**

**To Obtain Discovery for Use in an**
**International Proceeding.**

---

## MEMORANDUM OPINION

This proceeding is brought pursuant to 28 U.S.C. § 1782 to obtain discovery for use in an international proceeding.  Miya Water Projects Netherlands, B.V. ("Miya") has filed a Motion to Compel the Production of Documents Improperly Withheld on the Basis of Deliberative Process Privilege (ECF No. 35) against the Financial Oversight and Management Board for Puerto Rico (the "Board"), which has been permitted to join this case as Intervenor.  The Board has filed a Motion to Modify Order Granting *Ex Parte* § 1782 Application and to Modify Subpoenas Issued Pursuant to Same (ECF No. 41).  The Motions are fully briefed (*see* ECF Nos. 43, 48, 50).  While the Court finds no hearing necessary to resolve the Board's Motion, *see* D. Md. Local R. 105.6, further proceedings may be necessary to resolve Miya's Motion to Compel.

That said, for the reasons that follow, the Court will **DENY** the Board's Motion to Modify Order Granting *Ex Parte* § 1782 Application and to Modify Subpoenas Issued Pursuant to Same (ECF No. 41) but will **DEFER** ruling on Miya's Motion to Compel (ECF No. 35), pending a decision as to the possible appointment of a Special Master to resolve Miya's Motion.

## I.

### A.    The Parties and the Underlying Events[1]

Miya is a "Bestolen Vennootschap . . . organized under the laws of the Netherlands." A "BV" is a commercial entity with a corporate structure similar to that of a limited liability company in American law. ECF No. 1-3 at 1. Miya's business focuses on water management, water treatment, and water efficiency. *See id.*; ECF No. 35-2 at 7.

The Board is an agency of the government of Puerto Rico. *See* ECF No. 43 at 9. It was created pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") in 2016. *See id.* at 8. One of the Board's responsibilities is to oversee Puerto Rico's fiscal governance for capital projects, which includes a requirement that the Board give final approval to contracts with an estimated aggregate value of $10 million or more. *See id.* at 9. The Board sometimes engages outside consultants and advisers to assist it in carrying out these responsibilities. *See id.*

Moonshot Missions, Inc. is a nonprofit consulting agency headquartered in Maryland which specializes in advising on improvements to water systems. *See* ECF No. 1-1 at 17. Since March 2020, Moonshot and its chief executive officer George Hawkins have been engaged by the Board "in various capacities" to assist the Board in its function of reviewing proposed infrastructure projects. *Id.* at 5; *see* ECF No. 35-2 at 7. While rendering these services, both Moonshot and Hawkins have been made privy to certain documents and communications that the Board claims are sensitive and confidential. *See* ECF No. 43 at 10.

---

[1] The facts underlying both Miya and the Board's Motions are substantially the same. Accordingly, the Court provides here a synthesis of the relevant details as necessary. Unless otherwise noted, citations to pages in the parties' submissions use the page numbers as indicated by the Court's CM/ECF system.

Two years before the Board hired Moonshot and Hawkins, the Puerto Rico Aqueduct and Sewer Authority and the Puerto Rico Public-Private Partnerships Authority issued a request for proposals for a plan to update the water metering infrastructure in Puerto Rico (the "Water Metering Project"). ECF No. 35-2 at 7. Miya submitted a proposal pursuant to the request and was eventually designated as the "Preferred Proponent" for the project. *See id.* The Water Metering Project was expected to have an aggregate value of $10 million or more, so that it was subject to review by the Board. *See id.* at 7-8.

In December 2021, following its review of the Water Metering Project, the Board recommended that the project be cancelled in its entirety. *See id.* at 7-8. When the project was cancelled, Miya lost its status as a "Preferred Proponent." *See id.* In other words, Miya lost the opportunity to secure a large and potentially lucrative contract. *See id.*

In the present case, Miya claims that the Board's review of the Water Metering Project— and its consequent recommendation for cancellation—was tainted by Moonshot and Hawkins' inappropriate influence on the Board's decision making. *See id.* at 8. According to Miya, both Moonshot and Hawkins advised the Board on the project despite the fact that they possessed a material conflict of interest. *See id.* That is, since 2018, Moonshot and Hawkins are alleged to have provided consulting services to another company, Xylem, Inc. ("Xylem"), whose subsidiary was a competing bidder for the Water Metering Project Miya was about to be selected for, which was cancelled. *See id.* Neither Moonshot nor Hawkins, says Miya, disclosed this conflict of interest to the Board, despite a requirement that they do so. *See id.*; *see also* ECF No. 1-10 at 119-21 (showing that Hawkins signed a certification disclaiming the existence of any conflict of interest).

Shortly after the Water Metering Project was cancelled, at the Board's direction, the appropriate agencies issued a revised request for proposals for a project that was in all material respects the same as the one Miya had bid on. *See id.* at 9. Miya states that this inured to the benefit of Xylem because it gave Xylem's subsidiary a "second bite at the apple" on a project it had earlier lost. *Id.*

**B.     Miya's Application Under 28 U.S.C. § 1782 and the Present Dispute**

On November 15, 2022, Miya filed an *ex parte* application in this Court to obtain discovery from Moonshot and Hawkins, pursuant to 28 U.S.C. § 1782, for use in a suit that Miya represents it intends to bring against them in the Dutch court system. *See* ECF No. 1. On January 25, 2023, the Court granted Miya's application (the "January Order"), *see* ECF No. 9, and soon thereafter, Miya issued subpoenas to Moonshot and Hawkins, who began to produce the requested documents on a rolling basis. *See* ECF No. 36-2 at 10.

After receiving Miya's subpoenas, however, counsel for Moonshot informed the Board that Miya was seeking certain documents that had in fact originated from or concerned communications Moonshot had had with the Board. *See* ECF No. 41-1 at 9. Per Moonshot, the Board reviewed the documents prepared by Moonshot and determined that, indeed, in its view, many were covered by the deliberative process privilege, the work product doctrine, and/or the attorney-client privilege. *See id.* at 9-10. After Moonshot advised the Board that it believed it could not, on its own, decide to withhold the documents from Miya on the Board's behalf, and more than two months after learning about Miya's subpoenas, on July 19, 2023, the Board filed a motion to intervene in the present case for the "limited purpose of protecting its privileged materials." ECF No. 22-1 at 6.

While its motion to intervene was pending, the Board provided Miya with a privilege log, which it updated on August 22, 2023, denoting the bases for its privilege claims as to 428 documents or portions of same (the "Withheld Documents"). *See* ECF No. 43 at 12-13. Around the same time, counsel for Moonshot notified Miya that 11 documents previously reviewed by the Board and subsequently produced by Moonshot to Miya were privileged and sought to claw them back. *See* ECF No. 35-2 at 11.

On August 29, 2023, the Court granted the Board's motion to intervene, permitting intervention "as set forth in the Motion to Intervene." ECF No. 29. Thereafter, Miya filed its present Motion to Compel the Production of Documents Improperly Withheld on the Basis of Deliberative Process Privilege (ECF No. 35). The Board then filed its Motion to Modify Order Granting *Ex Parte* § 1782 Application and to Modify Subpoenas Issued Pursuant to Same (ECF No. 41).

## II.

Under 28 U.S.C. § 1782(a), a party may file an application in federal district court seeking an order authorizing the issuance of subpoenas to compel a person or entity to produce documents or testimony for use in a foreign or international tribunal. The statute aims to "provid[e] efficient means of assistance to participants in international litigation in [U.S.] federal courts" and to "encourag[e] foreign countries by example to provide similar means of assistance to [U.S.] courts." *Al Fayed v. United States*, 210 F.3d 421, 424 (4th Cir. 2000) (citation omitted). An applicant bears the burden of showing that four statutory conditions are satisfied before an order granting the application may issue:

> (1) The application must be made to the "district court for the district in which the person resides or is found"" (2) the application must come from "an interested person" or a foreign tribunal; (3) the application must seek evidence, including

"testimony" or "a document'"; and (4) the evidence sought by the application must
be "for use in a foreign or international tribunal."

*In re Newbrook Shipping Corp.*, 31 F.4th 889, 894 (4th Cir. 2022) (quoting 28 U.S.C. § 1782(a)).
If all these conditions are met, the district court nonetheless "retains discretion in granting or
denying these orders." *Id.* at 896. When exercising this discretion, a court considers additional
factors, as identified by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542
U.S. 241 (2004). These include examining (1) "the involvement of 'the person from whom
discovery is sought'"; (2) "the nature of the foreign tribunal, the character of the proceedings
underway abroad, and the receptivity of the foreign government, court or agency to U.S. federal-
court judicial assistance"; (3) whether the Section 1782 application "conceals an attempt to
circumvent foreign proof-gathering restrictions or other policies of a foreign country of the United
States"; and (4) whether the discovery request is "unduly intrusive or burdensome." *In re
Newbrook Shipping Corp.*, 31 F.4th at 896 (quoting *Intel*, 542 U.S. 264-65).

A Section 1782 application may be sought, and granted, on an *ex parte* basis. *See id.* at
892-93 (citing *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012)).
If a court grants such an application *ex parte*, "the target" of the application is typically provided
"a chance to challenge the discovery order" at a later date. *Id.*

### III.

In its Motion to Modify under Federal Rules of Civil Procedure 45 and 60, the Board asks
the Court to modify its January Order, which granted Miya's *ex parte* Section 1782 application.
*See* ECF No. 41. In the alternative, the Board asks that the Court modify the subpoenas issued
pursuant to the January Order, with the result that the Withheld Documents would be removed
from their scopes. *See id.* The Board argues that it is entitled to such relief because Miya's
application should never have been granted in the first place. *See id.* at 13.

6

According to the Board, Miya's application suffers from a fundamental defect because the application does not establish that the discovery sought would be used in a "foreign proceeding" that is within "reasonable contemplation." *See id.* at 13-17 (quoting *In re Newbrook Shipping Corp.*, 620 F. Supp. 3d 298, 310 (D. Md. 2022) (vacating, on remand, prior order granting Section 1782 on the grounds that a foreign proceeding was not in "reasonable contemplation")). The Board contends that no foreign proceeding is within reasonable contemplation, as shown by the supposedly aspirational language used by Miya's counsel in their declarations supporting its application (i.e., terms like "may," "hope," and "could"), and the fact that nearly a year after the Court's January Order, Miya has not yet filed suit in Dutch court. *See id.* at 15-18. The Board also notes that Miya has filed three similar applications in the federal district courts for the District of Puerto Rico, the District of Columbia, and the Southern District of New York, suggesting that Miya's efforts in this District are little more than a "fishing expedition." *Id.* at 15 n.5, 18.[2]

Miya opposes the Board's Motion on the grounds that the Board's request exceeds the scope of intervention permitted by the Court; that the Board lacks standing to make such a request; and that the Board has failed to bring its request in a timely fashion. *See* ECF No. 50 at 11-19. Miya also defends the Court's issuance of its Order granting its Section 1782 application on the merits. *See id.* at 20-27.

Although the Board attempts to frame its Motion as limited to modifying the January Order to exclude allegedly privileged materials from its scope, the Board's argument clearly travels far beyond that. *See, e.g.,* ECF No. 41-1 at 12 ("[T]he Subpoenas should never have been

---

[2] *See In re Application of Miya Water Projs. Netherlands B.V.*, No. 3:23-mc-391 (D.P.R. Aug. 1, 2023); *Miya Water Projs. Netherlands B.V.*, No. 1:23-mc-43 (D.D.C. May 2, 2023); *In re Application of Miya Water Projs. Netherlands B.V.*, No. 1:22-mc-310 (S.D.N.Y. Nov. 4, 2022).

authorized."). In the Court's view, what the Board is asking the Court to do is to reconsider its prior decision. This the Court declines to do.

The Court granted the Board leave to intervene for the "limited purpose" of litigating its privilege dispute with Miya. *See* ECF No. 29; ECF No. 22. By seeking now to challenge the Court's January Order, the Board presumptuously exceeds the limitations that it itself proposed in justification of its participation in this case. *See* ECF No. 22. This is unacceptable. The Board is not entitled to raise issues "outside of the limited scope of intervention" permitted by the Court. *United States v. S. Fla. Water Mgmt. Dist*, 28 F.3d 1563, 1567 n.1 (11th Cir. 1994); *Gatreaux v. Pierce*, 743 F.2d 526, 530 (7th Cir. 1984).

As noted, "targets" of a Section 1782 application are typically afforded the opportunity to challenge orders granting such applications. *See In re Newbrook Shipping*, 31 F.4th at 892-93. But the Board is not a "target" of Miya's application, Moonshot and Hawkins are. *See* ECF No. 1; ECF No. 9. And neither Moonshot nor Hawkins has sought to modify the January Order.[3]

Nor do the rules invoked by the Board support its position that, as Intervenor, it is entitled to challenge the January Order. Federal Rule of Civil Procedure 60 provides in relevant part that "[o]n motion and just terms, the court may relieve *a party* or its legal representative from a final judgment, order, or proceeding" for a list of enumerated reasons, but no such reasons apply here, nor is there "any other reason that justifies relief." Fed. R. Civ. P. 60(b) (emphasis added). Such motions must also be made "within a reasonable time." Fed. R. Civ. P. 60(c). The Board's Motion

---

[3] Without expressing any view on the merits of the Board's argument against issuance of the Section 1782 application, the Court notes that each of Miya's similar applications in other courts has been granted. Specifically, judges in the District of Puerto Rico and the District of Columbia have issued detailed and well-reasoned opinions finding that Miya's applications met all the statutory and discretionary factors for granting the applications. *See In re Miya Water Projs. Netherlands B.V.*, No. 23-00391 (GMM), 2023 U.S. Dist. LEXIS 198201 (D.P.R. Nov. 3, 2023); ECF No. 17, *In re Application of Miya Water Projs. Netherlands B.V.*, No. 1:23-mc-43 (GRC/GMH) (D.D.C. Sept. 27, 2023). The case at bar has no characteristics indicating that this Court should reach a different result.

was filed months after it learned that its allegedly privileged documents were covered by Miya's subpoenas.

Further, although Rule 45 provides that a court must "quash or modify a subpoena" that "requires disclosure of privileged or protected matter, if no exception or waiver applies," Fed. R. Civ. P. 45(d)(3)(A)(iii), the Court has not yet determined whether the Withheld Documents are in fact privileged. Therefore, modifying the January Order based solely on the Board's argument that the Order should not have issued in the first place would be altogether inappropriate.[4] If the Court concludes that the Withheld Documents or any subset is, indeed, covered by the deliberative process privilege, Miya will be precluded from obtaining those documents.

In sum, the Board is entitled to none of the relief it seeks in its Motion to Modify Order Granting *Ex Parte* § 1782 Application and to Modify Subpoenas Issued Pursuant to Same (ECF No. 41). Its Motion will therefore be **DENIED**.

## IV.

Miya's Motion to Compel the Production of Documents Improperly Withheld on the Basis of Deliberative Process Privilege (ECF No. 35) stands on a different footing. Miya seeks the production of approximately 428 documents as to which the Board claims the deliberative process privilege.[5] At present, the parties' submissions, including the Board's privilege log, are insufficient for the Court to be able to make a reasoned determination of whether, and to what extent, each document is privileged, if at all. Such an evaluation would in all likelihood require an *in camera* review of the Withheld Documents, as well as further briefing and possibly oral

---

[4] Whether or not the Board's Motion can be classified as a discovery motion, which under the Court's Local Rules must be preceded by a conference between the parties to discuss resolution of the dispute without court intervention, *see* D. Md. Local R. 104.7, the Board's path of challenging the January Order without providing prior notice to Miya was, at the very least, non-collegial.

[5] Miya's Motion does not, at this juncture at least, challenge the Board's assertions of attorney-client privilege or the work product doctrine. *See* ECF No. 35-2.

argument. Given this complexity, proper resolution of Miya's Motion would necessitate extensive expenditure of resources that the Court cannot, given its other obligations, dedicate to just one case.

Accordingly, the Court is inclined to appoint a Special Master under Rule 53 to hold appropriate proceedings and conduct a review of the Withheld Documents as necessary to resolve Miya's Motion. *See* Fed. R. Civ. P. 53(a)(1)(C) ("[A] court may appoint a master" to address "matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district."). But before it does so, the Court will give the parties "an opportunity to be heard" as to whether the appointment of a Special Master is appropriate. Fed. R. Civ. P. 53(d)(1). If either party agrees with the proposal that a Special Master be appointed, the party may also suggest candidates for appointment. *See id.*

In addition to suggesting candidates for appointment, the parties may indicate: (a) what issues before the Special Master the parties anticipate should be considered; (b) what duties or limits on those duties should be imposed on the Special Master; (c) the proposed timeline for proceedings before the Special Master, including the time for lodging any objections to the Special Master's report; and (d) the terms and procedures for fixing the Special Master's compensation.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** that:

1. The Board's Motion to Modify Order Granting *Ex Parte* § 1782 Application and to Modify Subpoenas Issued Pursuant to Same (ECF No. 41) is **DENIED**;

2. Ruling on Miya's Motion to Compel the Production of Documents Improperly Withheld on the Basis of Deliberative Process Privilege (ECF No. 35) is **DEFERRED**; and

3.  Miya and the Board **SHALL**, within twenty (20) days, state in writing their positions with respect to the proposed appointment of a Special Master, as well as the issues associated therewith, as set forth in the foregoing Memorandum Opinion.

A separate Order will **ISSUE**.

December __, 2023

PETER J. MESSITTE
U.S. District Judge

11